2092

SMOKY MOUNTAIN SECRETS, INC., Appellant v. The SOUTH
CAROLINA EMPLOYMENT SECURITY COMMISSION, Respondent.
(439 S.E. (2d) 288)

Court of Appeals

*Randall H. Johnson* and *Elizabeth Platte Johnson,* of *Johnson & Johnson,* Charleston, *William B. Marsh,* of *Meares, Marsh & Ralls,* Maryville, TN, *for appellant.*

*H. Williams Funderburk, Jr.* and *William H. Griffin,* Columbia, *for respondent.*

Heard Oct. 5, 1993.

Decided Dec. 6, 1993.

Reh. Den. Jan. 20, 1994.

SHAW, Judge:

This matter arose when the South Carolina Employment Security Commission began investigation of the employment status of certain telephone solicitors and delivery drivers whose services were retained by respondent, Smoky Mountain Secrets, Inc. The Commission issued a letter ruling both the telephone solicitors and the delivery drivers were employees of the appellant. Following a hearing on the matter, the Commission issued an administrative ruling concluding the telephone solicitors and drivers were employees. The appellant appealed to both the Full Commission and the Circuit Court which also affirmed. We affirm in part and reverse in part.

In reviewing a determination by the South Carolina Employment Security Commission on the employment status of workers whose services are retained by a business, the standard of review to be applied by this court is the substantial evidence rule prescribed by the Administrative Procedures Act. *Todd's Ice Cream, Inc. v. South Carolina Employment*

*Security Commission,* 281 S.C. 254, 315 S.E. (2d) 373 (Ct. App. 1984). We must affirm the factual findings of the Commission if they are supported by substantial evidence. *Kilgore Group, Inc. v. South Carolina Employment Security Commission,* — S.C. — , 337 S.E. (2d) 48 (1993).

The primary consideration in determining whether an employer-employee relationship exists is whether the purported employer has the right to control the servant in the performance of his work and the manner in which it is done. *Id.* The test is not the actual control exercised, but whether there exists the right and authority to control and direct the particular work or undertaking. The principal factors which indicate the right to control are (1) direct evidence of the right to, or exercise of, control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire. *Id.* While the contract entered into by the parties must be considered in determining the nature of the relationship, the primary test of its character is the intention of the parties and language in the contract merely declaring the relationship as that of employer/independent contractor is not dispositive. *Id.*

Turning to the facts of this case, the record reveals as follows. This company is in the business of soliciting, by telephone, orders for gift packs of jellies, preserves, sauces, and seasonings and delivering these items to the buyers' homes. The company sells these items as a fundraising program for the South Carolina Troopers Association and the Association receives part of the proceeds. The company uses three classes of workers to accomplish its business, namely, office managers, telephone solicitors (sellers), and delivery drivers (drivers). It is undisputed that the office managers are employees of the company. However, the company contends the sellers and drivers are not employees, but are independent contractors.

## SELLERS

The record shows the sellers are required to go to the company's office and use the company phones when making the solicitations. They are not allowed to use their home phones. Suggested working hours are from 2:00 p.m. to 9:00 p.m. Monday through Friday and 10:00 a.m. to 7:00 p.m. on Saturdays with a mandatory one-hour break on the weekdays and two-

hour break on Saturdays. However, the phones are available for use beginning at 11:00 a.m. on weekdays so a seller may come in early if he or she desires. While a seller is not required to work a 37-hour week, that is the maximum hours he or she is allowed to work. The break period is designated by the office manger and the office is shut down during which time the seller cannot work. The company requests notice from a seller if he or she is going to be out for a day.

The company provides the seller with a list of potential customers and the calls are made strictly from that list. The seller is also provided with a script and, while most sellers put the script in their own words, they are not allowed to deviate from the basic concept of the sales pitch. At the end of each day, sellers fill out an invoice and a sales report, showing the number of hours worked and sales made.

The sellers are paid every Saturday and receive a guaranteed wage of $4.00 per hour drawn against a commission of $3.50 for every delivered sale. The seller is paid the higher of the two amounts, whether it is based on hours worked or commission earned. They do not bear any risk for bad checks from buyers.

## DRIVERS

Drivers report to the office each day around noon to pick up their routes and the products they are to deliver. The deliver the product to the buyers and collect payments at delivery. For each completed delivery the drivers are paid a commission of $2.80. If money was not collected, the delivery was not completed. Although they are provided a name badge and a shirt bearing a South Carolina Troopers Association emblem, the drivers provide their own automobile, gas and insurance. No mileage expense or any travel expenses are paid by the company. While, like the sellers, the drivers are not at risk for any bad checks, they are responsible for any loss or damage to the product while in their possession.

The manner and the means in which the drivers run their routes are left up to the individual drivers. They are unsupervised on their routes until 9:15 p.m. at which time they are to turn in the money collected and the undelivered products. They can stop and go as they please, and are free to work their own hours between pick-up and return times. They can

take other persons along on deliveries and even hire others to make the deliveries. The drivers are given routes grouped in areas for the convenience of the drivers.

There are no guidelines for termination based on failure to deliver the products, although consistently low deliveries may result in a driver being given a smaller route. If the company receives a complaint that a driver has been rude, the manager will discuss the problem with the driver, give the driver a verbal warning and inform the driver recurrence of the situation would be grounds for termination.

■ Based on the above factual record, we find the record contains substantial evidence that the sellers are employees of the company. The company clearly has the right and authority to control and direct the seller in the performance of his work and the manner in which it is performed. The company placed various restraints on the work schedule including hours during which the sellers could work, a maximum number of hours to be worked each week, and a mandatory break during each work day. While the sellers were paid a commission based on each sale, they were guaranteed to be paid at least $4.00 per hour if their commission was lower. Further, the sellers worked in the company's office, on company phones, using customer lists and a script provided by the company.

■ We are constrained, however, to find that substantial evidence does not exist to support the finding that the drivers are employees of the company. We are mindful that substantial evidence is something less than the weight of the evidence and is evidence which, considering the record as a whole, would allow reasonable minds to reach the same conclusions as that of the administrative agency. Todd's Ice Cream, Inc., supra. However, the record is devoid of substantial evidence that the company has the right to control the drivers in the performance of their work and the manner in which they perform. The drivers are totally unsupervised in the manner in which they deliver their routes. They can stop and go as they please, take along passengers, and even hire others to make deliveries. The drivers are not paid on an hours-worked basis, but are paid on commission based only on completed deliveries. The principle equipment necessary for delivery of the product, the automobile, is furnished by the

driver himself, along with gas and insurance and the company bears no travel-related expenses.

Thus, we conclude the drivers are independent contractors and are not employees.

For the foregoing reasons, the order below is

Affirmed in part, reversed in part.

BELL and CONNOR, JJ., concur.